No. 64,402

STATE OF KANSAS, *Appellant*, v. WILLIAM E. ROSS, *Appellee*.

(795 P.2d 937)

Opinion filed July 13, 1990.

*Kevin C. Fletcher*, assistant county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Kerry J. Granger*, of Hutchinson, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is an appeal by the prosecution, pursuant to K.S.A. 22-3602(b)(1), from the district court's dismissal of the complaint filed herein. The district court held that the South Hutchinson police officer who arrested the defendant in Hutchinson was not assisting Hutchinson police officers at the time and, hence, had no authority to arrest the defendant.

The pertinent statute is K.S.A. 22-2401a, which provides, in pertinent part:

"(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:

(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and

(b) *in any other place when a request for assistance has been made by law enforcement officers from that place* or when in fresh pursuit of a person." (Emphasis supplied.)

The evidence relied upon by the district court consisted of the joint affidavit of the two involved Hutchinson officers (Rankin and French) and the testimony of the arresting South Hutchinson officer (Stofer). Appellate review herein does not involve the reweighing of conflicting evidence. The underlying facts are not in dispute.

The joint affidavit states, in pertinent part:

"I, Patrolman R. A. Rankin and Patrolman S. R. French, of the Hutchinson Police Department, Reno County, State of Kansas, being of lawful age and duly sworn upon my oath, depose and state:

"THAT at about 13:00 hours of August 24, 1988, we were dispatched to 617 East C, Hutchinson, Reno County, Kansas, to assist the Hutchinson Fire Department on a residential fire. This was the residence of Debbie Drum. Due to the suspicious nature of the fire, we were called to the scene. Patrolman French and myself checked for local warrants on the person's [sic] present at the residence, including the individual identified as William Ross. Patrolman French and myself were advised by the Dispatcher that a South Hutchinson, Kansas, Court held an active warrant on William Ross. Officer French called for South Hutchinson officers to come to the scene to arrest and transport William Ross. Officer Dennis Stofer of the South Hutchinson Police Department was dispatched to 617 East C, Huchinson, Kansas, because of that request and arrested William E. Ross and placed him [in] custody. Officer French and myself remained at the scene of the fire, which was later determined to be a possible arson."

The testimony of Officer Stofer was that he was on patrol when he received a call from his dispatcher to check and see if the warrant for William E. Ross was still active. The officer carried all active warrants in his patrol car. He confirmed the active status of the warrant and relayed that information to his dispatcher. He testified that the following events then occurred:

"Q. (Defendant's counsel) . . . And then what happened once you verified for the Reno County dispatch that you did have an active warrant for Mr. Ross?

"A. The dispatchers advised me over the radio that the Hutchinson Police were at 617 East C in Hutchinson at the scene of a fire and that Mr. Ross was at that location, also. And they were requesting me to come to that location.

"Q. And what was your understanding as to why you were being requested to go to that location at that time at 617 East C in Hutchinson?

"A. It was my understanding that they wished me to come there and execute the arrest warrant.

"Q. Okay, and once you gained that understanding what did you do next then to act upon it?

"A. I then drove to 617 East C in Hutchinson where I was met by two Hutchinson police officers at the scene of the fire. They took me to the back yard of 617 East C, introduced me to Mr. Ross and at that time I advised him of his warrant and placed him under arrest.

  . . . .

"Q. And once the Hutchinson police officers took you up to Mr. Ross, did they remain at that location or did they leave and perform other duties?

"A. One of them walked back to the patrol car with me and to the best of my knowledge they remained there until the fire scene was cleaned up and the roadways were cleared again.

"Q. Was it your understanding that the Hutchinson Police Department was at that location at 617 East C because of the fire?

"A. Yes, sir.

  . . . .

"Q. And did you have him get into your patrol car?

"A. Yes, sir; I did.

"Q. And what did you do with him then at that time?

"A. I then transported him to the Reno County Detention Center.

"Q. And when you got to the Reno County Detention Center, then what happened there?

"A. During the booking process I asked Mr. Ross to remove the items from his pockets and he removed those items and then as standard procedure in the detention procedure I completed a pat down search of him to make sure that he emptied everything from his pockets.

"Q. Had he forgotten anything?

"A. Yes, sir; he had.

"Q. What was still there?

"A. In the right rear pocket I found a syringe which I showed to the sergeant on duty at the time, which was Sergeant Divelbiss.

"Q. Is that Ruth Divelbiss?

"A. Yes, sir. And on seeing that then she requested that we do a complete strip search of Mr. Ross and his clothing.

"Q. Did you perform a strip search?

"A. Yes, sir; we did.

  . . . .

"Q. And what, if anything, did you find in this strip search?

"A. During the strip search I found a plastic bag—the first plastic bag I found was removed from the watch pocket of his blue jeans.

"Q. Okay.

"A. And this bag contained a small quantity of a yellowish, powdery substance. Second plastic bag was also removed from that pocket and inside that bag were two other bags and inside those, all three of those bags contained four smaller bags which held the same—apparently the same white powdery substance.

"Q. So I guess basically you found the syringe initially and then after you found the syringe you found some little packets of white powder?

"A. Yes, sir.

"Q. And was that the extent of what you found that you felt violated the law?

"A. Yes, sir."

Note: The complaint involved in this appeal contains three drug-related charges, which all arise from the items taken from defendant's person upon arrest on the traffic warrant.

We continue with excerpts from Officer Stofer's testimony:

"Q. Was it your understanding that you were assisting someone in Hutchinson by coming into Hutchinson or that you were being asked to come into Hutchinson by an officer so that you could execute the search (sic) warrant here?

"A. It was my understanding that I was asked to come into Hutchinson to execute an arrest warrant.

"Q. By arrest—by executing that arrest warrant did you understand that you were assisting any of the law enforcement officers in Hutchinson in the performance of their duties?

"A. That's correct. They were currently—

"Q. How were you helping them?

"A. They were currently involved in traffic control at the fire scene and had no officer available to make the arrest."

In concluding that Officer Stofer had no authority to arrest the defendant in Hutchinson, the district court stated:

"There is no showing that the local law enforcement officers requested assistance, but rather that they declined to arrest the defendant and deferred jurisdiction to the South Hutchinson officer to make the arrest. This is different than showing a need for assistance in making an arrest. They had clearly identified the defendant and knew of the outstanding warrant and could have arrested the defendant themselves on the basis of that warrant."

The district court appears to have engrafted an additional requirement onto K.S.A. 22-2401a(2)(b). That is, a request of assistance must arise from facts demonstrating an actual need for assistance from outside the requesting officer's jurisdiction. There is nothing in the statute demonstrating that such was the legislative intent.

The Hutchinson Fire Department was at the scene to put out a suspicious fire. The two Hutchinson police officers were at the scene to investigate the circumstances of the fire and control traffic problems arising therefrom. From the evidence, it is ap-

parent they believed these activities were a two-person job. With the active warrant being disclosed on a person they were interviewing, and a resultant duty to arrest the person, they apparently concluded the two-person job had become a three-person job. They asked the South Hutchinson police department to assist by sending personnel to make the arrest. This was the decision of the officers from Hutchinson who were on the scene. It is not necessary to establish that the need existed or that the Hutchinson police department did not have additional personnel available— only that the request for assistance was made. That request granted authority to Officer Stofer to enter Hutchinson and provide the requested assistance—the execution of the arrest warrant.

The facts herein are readily distinguishable from those in *State v. Hennessee*, 232 Kan. 807, 658 P.2d 1034 (1983). In *Hennessee*, the Pratt County Sheriff arrested Ms. Hennessee in Stafford County on a Pratt County warrant. Stafford County law enforcement made no request to the Pratt County Sheriff for assistance and, alternatively, the Pratt County Sheriff was not operating in "fresh pursuit" as authorized by K.S.A. 22-2401a(2)(b). The majority of this court held the district court properly dismissed the complaint as the arresting officer lacked jurisdiction to execute the warrant.

We conclude that the district court erred when it held that Officer Stofer lacked jurisdiction to make the arrest and in dismissing the complaint as a result of that conclusion.

The judgment is reversed and the case is remanded for further proceedings.