(329 P.3d 502)
No. 108,446

STATE OF KANSAS, *Appellee,* v. MIKAEL DWAYNE ENGLUND, *Appellant.*

—

Opinion filed April 11, 2014.

*Lydia Krebs*, of Kansas Appellate Defender Office, for appellant.

*Patrick Hurley* and *Jim McCabria*, assistant district attorneys, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., STANDRIDGE and STEGALL, JJ.

MCANANY, J.: Mikael Dwayne Englund appeals from his convictions of aggravated burglary and two counts of aggravated robbery, arguing that incriminating evidence obtained in a search of his home and his subsequent confession should have been suppressed and not admitted as evidence at his trial. Englund also argues that his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

The Lawrence police were investigating two separate robberies that took place at an apartment in Douglas County. Englund lived in Franklin County. Englund became a suspect, so in May 2011 the police obtained a search warrant from a district judge in Douglas County to search Englund's Franklin County residence. The search yielded incriminating evidence, and Englund was charged in Douglas County with a number of crimes.

Englund filed a pretrial motion to suppress the evidence found during the search of his Franklin County residence and his later confession and other incriminating evidence that were the products of the search. Englund argued the evidence obtained as a result of the search warrant, including Englund's eventual confession, should be suppressed because the warrant unlawfully authorized a search of a residence outside the territorial jurisdiction of the judge who issued it. See K.S.A. 22-2503.

The State argued the territorial restriction on the issuance of search warrants found in K.S.A. 22-2503 applied only to search warrants issued by district magistrate judges, not by district judges.

After the suppression hearing, the district court ruled K.S.A. 22-2503 applied only to district magistrate judges and not to district judges. The court noted that although K.S.A. 22-2202(14) defines "magistrate" as including both district magistrate judges and district court judges, K.S.A. 22-2503 specifically places jurisdictional limits on search warrants issued by a "district magistrate judge." The evidence sought to be suppressed was admitted at trial, and Englund was convicted of aggravated burglary and two counts of aggravated robbery. He appeals, arguing that the evidence obtained as a result of the Douglas County search warrant should have been suppressed.

Englund claims the search warrant was void when issued because the district court judge who signed the warrant had no jurisdiction to issue it for the search of a residence outside of his judicial district under the geographic limits set forth in K.S.A. 22-2503. The State responds that the jurisdictional limits established in K.S.A. 22-2503 explicitly refer only to district magistrate judges, not district judges.

*Standards of Review*

When, as here, the material facts are not in dispute, we have unlimited review over the legal question of whether suppression is warranted. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). This case also involves the interpretation and interaction of various statutes, matters of law over which our review is unlimited. *State v. Dale*, 293 Kan. 660, 662, 267 P.3d 743 (2011). When there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language is unclear or ambiguous do we resort to the canons of construction or legislative history to construe the legislature's intent. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). We must

first attempt to ascertain legislative intent through statutory language enacted, giving common words their ordinary meaning. *Urban*, 291 Kan. at 216. When construing statutes to determine legislative intent, we must consider various provisions of an act as a whole with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012). We must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012). In addition, when the legislature revises an existing law, we presume the legislature intended to change the law as it existed prior to the amendment and acted with full knowledge of the existing law. See *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012); *State v. Henning*, 289 Kan. 136, 144-45, 209 P.3d 711 (2009). Finally, we are mindful of the rule of lenity, under which criminal statutes are generally construed strictly in favor of the accused. This rule is constrained by the principle that the interpretation of a statute must be reasonable and sensible to effect the legislative design and intent of the law. The rule of lenity arises only when there is a reasonable doubt of the statute's meaning. *State v. Cameron*, 294 Kan. 884, 899, 281 P.3d 143 (2012).

### Englund's Arguments

Englund's contentions have been ably and conscientiously advanced in his appellate brief and in the forceful oral argument of his appellate counsel. K.S.A. 22-2503, enacted in 1970, is at the center of Englund's argument. It provides: "Search warrants issued by a district magistrate judge may be executed only within the judicial district in which said judge resides or within the judicial district to which said judge has been assigned pursuant to K.S.A. 20-319."

Central to Englund's arguments are Article 3, § 6(b) of the Kansas Constitution which extends to district courts "such jurisdiction in their respective districts as may be provided by law," and K.S.A. 20-301a which limits a judge's judicial power to the judicial district in which the judge sits. Englund argues that the legislature has

specifically granted to district judges extra-judicial district jurisdiction in issuing arrest warrants, summonses, witness subpoenas, and search warrants related to tracking devices. He concludes that these statutes would be meaningless if district judges already had judicial authority beyond their judicial districts.

Englund notes that K.S.A. 62-1830 (Corrick 1964), the predecessor to K.S.A. 22-2502, provided that a search warrant could be "directed to any peace officer of the state." K.S.A. 62-1830 (Corrick 1964) was repealed, and he claims no statute was enacted to specifically restore the ability of a district judge to issue a search warrant to be executed in another judicial district. He concludes that if the legislature had intended to restore the authority of a district judge to issue search warrants for locations beyond the judge's home district, the legislature easily could have said so, but it has not.

In considering Englund's argument, we turn to our constitutional and statutory scheme for the territorial jurisdiction of our judges in Kansas, which begins with Article 3, § 1, of the Kansas Constitution, which provides:

"The judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as are provided by law; and all courts shall have a seal. The supreme court shall have general administrative authority over all courts in this state."

The district courts referred to in the constitution are found in each of our 105 counties. K.S.A. 20-301 states: "There shall be in each county a district court, which shall be a court of record, and shall have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law, and shall have such appellate jurisdiction as prescribed by law." Article 3, § 6(a) of the Kansas Constitution provides for the creation of judicial districts. The various counties were originally grouped into five judicial districts. There are currently 31 judicial districts. As a general rule, each of the more populous counties constitutes a separate judicial district. The counties that are one-county judicial districts are Shawnee, Douglas, Johnson, Sedgwick, Cowley, Reno, and Wyandotte. The rest of the counties are in multi-county districts comprised of from

two to seven counties. In our present case, the search warrant was issued in Douglas County, a single-county judicial district, for the search of a residence in Franklin County, which is in a different judicial district.

Article 3, § 6(a) of the Kansas Constitution further provides: "Each judicial district shall have at least one district judge." Thus, we have at least one district judge in each of our 31 judicial districts. Article 3, § 6(b) of the Kansas Constitution provides: "The district courts shall have such jurisdiction in their respective districts as may be provided by law."

Since 1983 our legislature has required that there also be at least one judge in each of our 105 counties. K.S.A. 20-301b provides: "In each county of this state there shall be at least one judge of the district court who is a resident of and has the judge's principal office in that county." Thus, there must be at least one "district judge" in each judicial district, but also at least one "judge of the district court" in each county.

With the unification and reorganization of our state judicial system in the 1970s, the judges in the various counties became "judges of the district court" and were divided into three classes: district judges, associate district judges, and district magistrate judges. The position of associate district judge was later eliminated. Thereafter, K.S.A. 20-301a was enacted, which states: "There shall be two classes of judges of the district courts established pursuant to K.S.A. 20-301: District judges and district magistrate judges. As used in this act, 'judge of the district court' means any of such judges." K.S.A. 20-301a also sets for the general geographic limits on the jurisdiction of the judges of the district court:

"Such judges shall have the jurisdiction, powers and duties prescribed by this act and otherwise prescribed by law. *The judicial power and authority of a judge of the district court in each judicial district may be exercised anywhere within such judicial district* and may be exercised anywhere within any other judicial district when assigned to hear any proceeding or try any cause in such judicial district as provided in K.S.A. 20-319. . . ." (Emphasis added.)

While the general rule stated in K.S.A. 20-301a is that the judicial power of a judge is limited to the judge's home judicial district, a few years earlier our legislature had specifically expanded

the jurisdictional reach of the judges of the district court in certain instances. K.S.A. 22-2302(1) gives magistrates the authority to issue arrest warrants and summonses. As provided in K.S.A. 22-2305(2): "The warrant may be executed or the summons may be served at any place within the jurisdiction of the state of Kansas." Similarly, K.S.A. 22-3214 gives criminal defendants the right to subpoena witnesses to testify at the defendant's trial or at other hearings. This statute further provides: "(2) All courts having criminal jurisdiction shall have the power to compel the attendance of witnesses from any county in the state to testify."

Search warrants in Kansas may be issued by magistrates. K.S.A. 2010 Supp. 22-2502(a). The term "magistrate" as used in this statute is defined in K.S.A. 22-2202(14) as "an officer having power to issue a warrant for the arrest of a person charged with a crime and includes justices of the supreme court, judges of the court of appeals and judges of the district courts." In the district court, this would include both district judges and district magistrate judges.

Clearly, the legislature has the authority to define the extent of the judicial power judges of the district court may exercise. As noted earlier, Article 3, § 6(b) of the Kansas Constitution provides: "The district courts shall have such jurisdiction in their respective districts as may be provided by law." Englund contends that the legislature's definitive description of the geographic confines of the judicial power of the judges of the district court is found in K.S.A. 20-301a, which states in relevant part:

"The judicial power and authority of a judge of the district court in each judicial district may be exercised anywhere within such judicial district and may be exercised anywhere within any other judicial district when assigned to hear any proceeding or try any cause in such judicial district as provided in K.S.A. 20-319. . . ."

Englund finds support in *Verdigris Conservancy District v. Objectors*, 131 Kan. 214, 218, 289 Pac. 966 (1930), a case in which our Supreme Court considered the judicial authority of four district court judges from different counties who convened in Wilson County to determine the validity of an act organizing a conservancy district for the purpose of preventing and protecting against floods. The conservancy district covered the flood plain of the Verdigris

River and its tributaries in the counties of Elk, Greenwood, Montgomery, Wilson, and Woodson.

The court in *Verdigris* addressed the judicial authority of the panel of district court judges who convened in Wilson County. In doing so, the court confined its analysis to provisions in the Kansas Constitution and did not consider any of the statutes at issue in our present case. The court noted the provision in Article 3, § 1, of the Kansas Constitution which refers to "such other courts, as are provided by law." The court concluded that the legislature had the power to create an inferior court such as a conservancy court. But because of the constitutional prohibition against a district judge holding another office while serving as a judge, the court concluded the legislature could not "create a conservancy court, having judicial power, composed of judges of several judicial districts." 131 Kan. at 219. Thus, *Verdigris* was decided on principles not at issue in our case.

Nevertheless, Englund points to the portion of the opinion in which the court discussed the organizational structure of our court system. The court stated:

"It is manifest from the territorial organization of the judicial branch of the government which has been described that judicial business is to be done in judicial districts, by district courts and district judges acting within and for their respective districts; and a judge of the district court chosen for district A cannot be empowered to transport his judicial authority to district B and exercise his authority there, any more than he could be empowered to exercise the functions of judge of district B, in district B, while the judge of district B is present and qualified to act. The result is that when Judges Ayres, Forrest and Holdren left their judicial districts and went to Judge Brown's district they were without judicial authority there. They could not act as judges of the district court of Wilson county, with power to overrule Judge Brown, or act in any other judicial capacity, and the provision in the conservancy act for a conservancy court consisting of more than one judge is void." 131 Kan. at 218.

If K.S.A. 20-301a and the dicta from *Verdigris* were to establish a baseline for determining the geographic limits of a district judge's judicial authority, the issue then would become how and in what circumstances our legislature expanded the power of our district judges to exercise their judicial authority beyond the borders of their home judicial districts.

Englund points out, as noted earlier, that our legislature has specifically expanded the geographic reach of magistrates (including district judges and district magistrate judges) when issuing arrest warrants and summonses under K.S.A. 22-2302(1) and when issuing witness subpoenas under K.S.A. 22-3214(2). By specific legislative enactments arrest warrants, summonses, and witness subpoenas can be executed anywhere in the state. Englund argues that these enactments would have been a worthless exercise if our judges already had the power to act in this fashion outside their judicial districts.

Englund opines that these legislative enactments solved the practical problem of persons subject to an arrest warrant, summons, or subpoena fleeing the jurisdiction to avoid service, a problem not present when issuing a warrant for the search of a dwelling affixed to the land. Thus, he argues, there has been no legislative incentive to extend the geographic reach of our district judges in issuing search warrants.

The legislature formerly provided for statewide execution of search warrants in K.S.A. 62-1830 (Corrick 1964) but repealed that statute in 1970. It enacted K.S.A. 22-2503 that same year and restricted district magistrate judges from issuing extra-judicial district search warrants. Englund argues that in so doing, the legislature failed to restore to district judges the former power to issue statewide search warrants previously provided for in K.S.A. 62-1830 (Corrick 1964).

K.S.A. 2010 Supp. 22-2502 permits search warrants for the installation and use of a tracking device for an initial period not to exceed 30 days. Englund points to the legislature's recent amendment to K.S.A. 22-2503 in 2013 which deals with warrants for such tracking devices. K.S.A. 2013 Supp. 22-2503 now reads:

"(a) Except as provided in subsection (b), *search warrants issued by a district magistrate judge may be executed only within the judicial district* in which the judge resides or within the judicial district to which the judge has been assigned pursuant to K.S.A. 20-319, and amendments thereto.

"(b) *Search warrants* issued pursuant to subsection (a)(2) of K.S.A. 22-2502, and amendments thereto:

(1) *That are issued by a district judge may be executed anywhere within the state*; and;

(2) shall be valid during the time period specified by the warrant regardless of whether the tracking device or the subject person or property leaves the issuing jurisdiction.

"(c) As used in this section, 'tracking data' and 'tracking device' have the same meanings as defined in K.S.A. 22-2502, and amendments thereto." (Emphasis added.)

This statute allows a district magistrate judge to authorize placing a tracking device on a vehicle located in the judicial district, and the use of the device continues to be proper if the vehicle leaves the judicial district. District judges can issue warrants for the use of such tracking devices anywhere in the state.

Englund concludes that the only statutory enactments which expand upon the jurisdictional limits set forth in K.S.A. 20-301a have done so in clear and unequivocal language, language which is not found in the version of K.S.A. 22-2503 applicable to this case. He contends our legislature has clearly demonstrated in K.S.A. 22-2305(2), K.S.A. 22-3214(2), and most recently in the 2013 amendments to K.S.A. 22-2503 that it understands how to insert the necessary language to create an exception to the general limitations on territorial jurisdiction set forth in K.S.A. 20-301a. As stated in *State v. Mishmash*, 295 Kan. 1143, 290 P.3d 243 (2012); "[w]hen the legislature intends to limit a category, it clearly understands how to insert the necessary language."

Englund concludes that there is no legislative enactment which extends a district judge's jurisdictional reach in issuing search warrants beyond the judge's home district as specified in K.S.A. 20-301a. Further, he reminds us that to achieve the State's objective would require us to rewrite the statute by adding a provision not found there, and this we are not permitted to do. See *State v. Marx*, 289 Kan. 657, 673, 215 P.3d 601 (2009).

*The State's Arguments*

We consider the State's arguments in light of the same question raised in the analysis of Englund's arguments. If K.S.A. 20-301a and the dicta quoted earlier from *Verdigris* were to establish the general baseline geographic limit on the power of a district judge,

has our legislature expanded that judicial power when it comes to issuing search warrants?

The State argues that K.S.A. 22-2503 on its face imposes a geographic limit on search warrants issued by district magistrate judges, but conspicuously absent from the statute is any limitation on district judges. The plain reading of the statute supports this argument. The State argues that we can infer from this that the legislature intended the district judges to still have the power to issue search warrants statewide. The State argues that by specifically limiting the power of district magistrates, the clear implication is that district judges continue to have the power to issue search warrants to be executed outside of the judge's home district. This is consistent with holdings by the United States District Court for the District of Kansas applying state law in *Lord v. City of Leavenworth*, No. 08-2171-JWL, 2009 WL 129367 (D. Kan. 2009), at *4; and *United States v. Aikman*, No. 09-10097-01-JTM, 2010 WL 420063 (D. Kan. 2010), at *6.

If there were any ambiguity in the meaning of the pre-2013 version of K.S.A. 22-2503 that applies to this case, the legal maxim, *expression unius est exclusion alterius*, (expressing the one excludes the other), would support the State's analysis. As stated in *State v. Coman*, 294 Kan. 84, 87, 273 P.3d 701 (2012); "[c]ourts apply that maxim to presume that when the legislature includes specific items in a statutory list, it intends to exclude similar items not expressly listed." Judges of the district court are comprised of two classes of judges: district judges and district magistrate judges. K.S.A. 20-301a. Within the admittedly small universe of judges of the district court, limiting the geographic authority of district magistrate judges without reference to district judges suggests that the geographic limitation does not apply to district judges when it comes to issuing search warrants.

But the real issue is whether the repeal of the K.S.A. 62-1830 (Corrick 1964) had the effect of ending a district judge's power to issue a warrant to conduct a search anywhere in the state and, if so, whether the legislature ever restored that power through new legislation.

K.S.A. 62-1830 (Corrick 1964) was repealed in 1970. K.S.A. 22-2503 was enacted that same year. K.S.A. 22-2503 was enacted as part of the 1970 recodification of the Kansas Criminal Code. Before 1970, there was no statutory limit on where a search warrant issued by a magistrate could be served within the state. K.S.A. 62-1830 (Corrick 1964) stated:

"A warrant shall issue upon affidavit or upon oral testimony given under oath and recorded before the magistrate or judge. If the magistrate or judge is satisfied that there is probable cause for the issuance of a warrant, he shall issue such warrant describing the property to be searched for. . . . The warrant shall be directed to *any peace officer of the state of Kansas* . . . and shall command the officer to search . . . and to seize such property." (Emphasis added.)

The statute applied to search warrants issued by district judges and district magistrate judges alike. See *State v. Lamb*, 209 Kan. 453, 469, 497 P.2d 275 (1972), *overruled on other grounds in State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978).

The newer statute, K.S.A. 22-2503, took from district magistrate judges the power to issue search warrants outside their home judicial districts. But the legislature also enacted K.S.A. 22-2505 in 1970, which states:

"A search warrant shall be issued in duplicate and shall be directed for execution to all law enforcement officers of the state, or to any law enforcement officer specifically named therein."

This language in K.S.A. 22-2505 had previously been contained in K.S.A. 62-1830 (Corrick 1964), the statute that was repealed in 1970 when K.S.A. 22-2503 was enacted. The language in K.S.A. 22-2505 ("directed for execution to all law enforcement officers of the state") had previously been the basis for extra-judicial district search warrants under the old repealed statute, K.S.A. 62-1830 (Corrick 1964). See *State v. Sodders*, 255 Kan. 79, 872 P.2d 736 (1994), *superseded by statute as stated in State v. Mendez*, 275 Kan. 412, 66 P.3d 811 (2003).

When K.S.A. 62-1830 (Corrick 1964) was repealed and K.S.A. 22-2503 was enacted that same year, district magistrate judges were prohibited from issuing extra-judicial district search warrants, but the provision for statewide execution of search warrants for-

merly found in K.S.A. 62-1830 (Corrick 1964) was preserved in K.S.A. 22-2505. Magistrates authorized to issue search warrants in the district court are district judges and district magistrate judges. If district magistrate judges can no longer issue warrants for searches outside their home judicial district, that leaves only district judges; and if district judges cannot issue warrants for searches outside their districts, then enacting K.S.A. 22-2505 was a meaningless gesture. The State reminds us that we presume the legislature does not intend to enact meaningless legislation. *Turner*, 293 Kan. at 1088.

Englund counters with the argument that K.S.A. 20-301a was enacted in 1976, several years after K.S.A. 22-2505 became law, and " 'where there is a conflict between two statutes the latest legislative expression controls.' " *Sodders*, 255 Kan. at 83. But here we have a conflict between a general principle of law (K.S.A. 20-301a) and a more specific enactment dealing not with the overall jurisdiction of judges, but their specific jurisdiction in issuing search warrants (K.S.A. 22-2505). In this situation, the more specific statute controls. *Turner*, 293 Kan. at 1088. Further, when seeking to determine legislative intent, we must consider various provisions in pari materia with a view to reconciling and bringing the provisions into workable harmony if possible. *Coman*, 294 Kan. at 93.

Returning to first principles, the intent of the legislature governs if that intent can be determined. While in other instances the legislature has specifically referred to the jurisdictional reach of our district judges, the lack of that specific reference in the version of K.S.A. 22-2503 at the time this search warrant was issued is not the controlling factor. When we consider K.S.A. 22-2503 and K.S.A. 22-2505 together, two statutes enacted at the same time K.S.A. 62-1830 (Corrick 1964) was repealed, the legislature's intent is clear: district magistrates may no longer issue search warrants outside their home judicial district, but district judges can. Thus, we conclude the district court did not err in refusing to suppress the evidence obtained in the search of Englund's residence in Franklin County.

Apprendi *Sentencing Issue*

Englund also contends that the district court violated his constitutional rights when it used his criminal history to calculate his sentence without following the procedural safeguards of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi* requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum . . . be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. But a defendant's prior convictions are explicitly excluded from this requirement. 530 U.S. at 490.

The Kansas Supreme Court has recognized the continuing validity of this prior conviction exception to *Apprendi*'s requirements. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). Because our Supreme Court has given no indication that it is departing from *Ivory*, we are bound by it. See *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011), *rev. denied* 294 Kan. 946 (2012). The district court did not violate Englund's constitutional rights when it used his criminal history score to calculate his sentence.

Affirmed.