IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,954

In the Matter of J.O.

SYLLABUS BY THE COURT

1.

K.S.A. 2017 Supp. 22-2401a(2) generally authorizes law enforcement officers employed by a city to act within the city's limits, on property owned by or under the control of the city, and "in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person."

2.

Under the "request for assistance" exception in K.S.A. 2017 Supp. 22-2401a(2)(b), city law enforcement officers cannot exercise police powers outside the boundaries of their own city unless they have received a request for assistance from the law enforcement officers of the other place. Mere acquiescence or acceptance of assistance by the officers of the invaded jurisdiction after notification by the invading officers does not constitute a request for assistance under K.S.A. 2017 Supp. 22-2401a(2)(b).

3.

The Legislature adopted K.S.A. 2017 Supp. 22-2401a's statutory limitations on the jurisdiction of city law enforcement officers to protect the local autonomy of neighboring cities and counties, rather than to create an individual right.

4.

Generally, the remedy of suppression is unavailable if law enforcement officers conduct a search in violation of state statute only and the statute violated does not vest a

1

defendant with an individual right, the statute violated does not contemplate exclusion of evidence as a remedy, and the violation results in no cognizable injury to a defendant's substantial rights.

5.

In general, appellate courts review a district court's factual findings relating to a motion to suppress for substantial competence evidence—evidence that is relevant, substantive, and furnishes a substantial basis in fact from which the issues can reasonably be resolved. Appellate courts do not reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence and instead give great deference to the factual findings of the district court, including when a district court draws reasonable factual inferences from the evidence.

6.

Suppression of evidence is a deterrent measure, not a personal right. So courts restrict its application to those situations that effectively advance its remedial purpose.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 27, 2017. Appeal from Johnson District Court; THOMAS E. FOSTER, judge. Opinion filed July 27, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Jean Ann Uvodich*, of Olathe, argued the cause and was on the brief for appellant.

*Andrew J. Jennings*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: K.S.A. 2017 Supp. 22-2401a(2) authorizes law enforcement officers employed by a city to act within the city's limits, on property owned by or under the control of the city, and "in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person." Here, the district court held the Prairie Village Police Department (PVPD) violated this statute when it orchestrated two controlled buys from J.O., a juvenile, at her residence in Shawnee. The district court also found the PVPD committed willful and recurrent violations of the statute, in part because the buys occurred after this court held the PVPD had violated the statute in circumstances similar to this case. See *State v. Vrabel*, 301 Kan. 797, 347 P.3d 201 (2015).

On appeal, the parties do not dispute the district court's conclusion that the PVPD violated K.S.A. 2016 Supp. 22-2401a (at least once) or its findings that the PVPD officers acted willfully and that the PVPD had repeatedly violated the statute. Instead, the parties focus on whether the district court should have suppressed the evidence. We reject J.O.'s request for an order of suppression because (1) the district court took other action to deter future violations of the statute, (2) J.O. does not allege a constitutional violation or otherwise state a cognizable injury to her substantial rights, and (3) K.S.A. 2017 Supp. 22-2401a does not vest J.O. with an individual right.

FACTS AND PROCEDURAL HISTORY

The district court made the following detailed factual findings:

"At around 8:00 a.m. on August 24, 2015, a confidential informant ('CI') advised Officer Travis Gray of the Prairie Village Police Department ('PVPD') that [J.O.] had marijuana wax for sale in Shawnee, Kansas. At Gray's request, the CI arranged to buy

3

drugs from [J.O.] in Shawnee at 3:00 p.m. later that day. At around 2:15 p.m., prior to the buy, Gray contacted Sergeant Brent Griffin of the Shawnee Police Department ('SPD') to 'see if they could assist us in the buy that we had set up.' Griffin notified Gray that the SPD had no personnel available to assist PVPD with the controlled buy.

"Around 3:00 p.m. the CI met [J.O.] in Shawnee and purchased marijuana wax from [J.O.]. Officer Gray surveilled the transaction and later received the marijuana wax from the CI. SPD officers were not present at the buy location and did not provide assistance to Gray. The PVPD officers did not make contact with [J.O.] on the day of the controlled buy.

"On September 15, 2015, the CI advised Detective Patrick Mahoney of the PVPD that [J.O.] had marijuana for sale. The CI indicated that he could purchase marijuana from [J.O.] the following day at [J.O.]'s residence, which is located in Shawnee. At Mahoney's request, the CI arranged for the controlled buy to be conducted the following day at 3:00 p.m.

"The next day, Mahoney contacted Detective Thomas Hayselden of the SPD to notify him of the anticipated transaction with the CI and [J.O.] in Shawnee. Hayselden informed Mahoney that the SPD was unable to assist in the controlled buy due to lack of manpower.

"At around 2:50 p.m., at an undisclosed location in Shawnee, Mahoney and one other Prairie Village officer gave the CI $60 in cash from their 'control buy fund' and wired the CI with audio equipment. The PVPD officers then followed the CI to [J.O.]'s residence in Shawnee. Mahoney testified that Hayselden and SPD Officer Skinner were in an unmarked area listening to the transaction over a confidential informant scanner, whereas Hayselden testified the SPD officers were not present and provided no assistance.

"The PVPD officers surveilled the CI enter [J.O.]'s residence and listened as the CI paid for and [J.O.] furnished the marijuana. After leaving [J.O.]'s residence, the CI

4

met with the PVPD officers and gave them the purchased marijuana. The PVPD officers did not attempt to contact [J.O.] on the day of the controlled buy.

"On January 20, 2016, the State charged [J.O.] with two charges of distribution of marijuana, in violation of K.S.A. 21-5705(a)(4) and two charges of use of a communication facility to sell a controlled substance, in violation of K.S.A. 21-5707. [J.O.] filed a motion to suppress all evidence obtained from the controlled buys. At evidentiary hearings on the motion to suppress, the State put on testimonial evidence from Sergeant Gray, Sergeant Griffin, Detective Mahoney, and Detective Hayselden to support its position that the PVPD had jurisdiction to conduct the controlled drug buys in Shawnee.

"Officer Mahoney explained that sometime prior to the controlled drug buys with [J.O.], the CI was arrested by SPD and wished to work off his charges by being an informant for SPD. SPD turned over the CI to PVPD with the understanding that the CI would be used to target illegal drug sales in Shawnee. PVPD knew the CI was a Shawnee resident and that his only drug targets were in Shawnee. After turning over the CI to PVPD, SPD had no involvement with the CI. Detective Hayselden testified that SPD had no knowledge of the investigation regarding [J.O.]. Mahoney testified that there was no evidence [J.O.] was selling drugs in Prairie Village or targeting Prairie Village. PVPD used the CI to target Shawnee because, as Mahoney explained[,] 'just because the problem is in Shawnee does not mean it will stay in Shawnee.'"

Based on these findings, the district court determined the PVPD officers exceeded their authority under K.S.A. 2016 Supp. 22-2401a when surveilling the two drug buys in Shawnee. Turning to whether J.O.'s request for suppression would be appropriate given those violations, the district court noted J.O. had a "voluntary encounter with the CI" and had not been searched or seized by officers. Thus suppression could not occur by operation of the federal exclusionary rule that protects against violations of the Fourth Amendment to the United States Constitution or by operation of Kansas' statutory

5

exclusionary rule, K.S.A. 22-3216, because both apply only when a search or seizure has occurred.

The district court then discussed this court's ruling in *Vrabel*, 301 Kan. 797, another case in which the PVPD exceeded its authority under the statute by arranging a drug buy outside Prairie Village. In *Vrabel*, this court decided not to suppress the evidence of a drug buy, although it left open the possibility in future cases where officers willfully and repeatedly violated the statute. 301 Kan. at 813-14. The district court expressed its hesitancy to suppress the evidence given the outcome in *Vrabel* and because the decision "did not declare or authorize or set forth any specific circumstances in which the trial [or district] court could apply the exclusionary consequence." But the district court announced it would advise "the Prairie Village police officers of their Fifth Amendment privilege against self-incrimination if they are called to testify in future proceedings pertaining to this matter."

J.O. appealed to the Court of Appeals, arguing the district court should have suppressed the evidence because it had found the PVPD willfully and repeatedly violated K.S.A. 2016 Supp. 22-2401a. *In re J.O.*, No. 116,954, 2017 WL 4848252, at *2 (Kan. App. 2017) (unpublished opinion). The Court of Appeals panel noted that the State had not cross-appealed these findings, leaving only one question:  whether the district court erred in failing to suppress the evidence. 2017 WL 4848252, at *3 ("If an appellee fails to file a cross-appeal, any challenge to an adverse ruling is not properly before the appellate court."). The panel also noted the varying interpretations of *Vrabel* being presented to it: The district court did not believe it had authority under *Vrabel* to suppress the evidence even in the face of recurrent and willful violations of the statute, J.O. argued *Vrabel* gave that authority, and the State argued a district court could suppress evidence only if a defendant makes a search or seizure claim and argues the officers willfully and repeatedly engaged in unlawful conduct.

Resolving these various viewpoints, the Court of Appeals panel concluded: "The most straightforward reading of *Vrabel* is that the exclusionary rule is generally not appropriate for violations of K.S.A. 2014 Supp. 22-2401a, but the court left open the possibility that the exclusionary rule could be applied in the case of willful and recurrent violations." 2017 WL 4848252, at *6. The panel then noted that "the ultimate purpose of the exclusionary rule is deterrence," and it concluded suppression would "likely not serve as a deterrent." 2017 WL 4848252, at *6. It reasoned that the PVPD seemed to be engaged in *Vrabel*-like conduct at the first buy from J.O., but the State had dismissed charges related to that buy. At the second buy, "the PVPD seems to have made at least a nominal effort to comply with the statute," and the buy "appears to have been in compliance with the statute." 2017 WL 4848252, at *6. For support, the panel cited our decision in *State v. Robinson*, 303 Kan. 11, 123, 363 P.3d 875 (2015), *disapproved of on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017).

J.O. petitioned this court to review the panel's decision, which we granted.

ANALYSIS

Before us, as in the district court and the Court of Appeals, J.O. asserts the district court should have suppressed the evidence of the drug buys. She does not argue she suffered a constitutional violation or any particularized harm. Instead, she focuses on the repetitive and willful conduct that we cautioned against in *Vrabel*. She does not discuss our decision in *Robinson*, which the panel had cited in support of its decision. But she argues the Court of Appeals erred because it weighed evidence relating to the illegality of the second buy and made a determination the PVPD complied with the statute—a conclusion contrary to the findings of the district court.

7

To discuss these arguments, we segment our analysis into three parts: (1) A discussion of *Vrabel* and *Robinson*, which inform our analysis; (2) a consideration of whether the Court of Appeals panel reweighed evidence in reaching its conclusion the second buy substantially conformed to K.S.A. 2016 Supp. 22-2401a; and (3) an analysis of whether suppression was warranted.

1.      Vrabel *and* Robinson

In *Vrabel*, the district court suppressed evidence obtained during a controlled buy set up by a CI working with the PVPD. The CI and Carl Vrabel agreed to meet at a grocery store parking lot in Leawood, a location the PVPD often used for drug buys even though it was outside the territorial limits of Prairie Village. The *Vrabel* court rejected the State's arguments that the PVPD had complied with K.S.A. 2014 Supp. 22-2401a. *Vrabel*, 301 Kan. at 807-08. In doing so, the *Vrabel* decision concluded the territorial limits applied to the exercise of all powers of law enforcement officers, not just when they conducted a search or a seizure. 301 Kan. 797, Syl. ¶ 4. In addition, it clarified which law enforcement agency had to initiate the request for assistance:

> "To exercise their powers as law enforcement officers in a place outside the boundaries of their own city pursuant to the 'request for assistance' exception under K.S.A. 2014 Supp. 22-2401a(2)(b), the city officers must have received a request for assistance from the law enforcement officers of the other place. Mere acquiescence or acceptance of assistance by the officers of the invaded jurisdiction after notification by the invading officers does not constitute a request for assistance under K.S.A. 2014 Supp. 22-2401a(2)(b)." 301 Kan. 797, Syl. ¶ 5.

The *Vrabel* decision turned to a discussion of remedy and noted that this court had affirmed suppression of evidence based on a violation of K.S.A. 22-2401a in *State v. Sodders*, 255 Kan. 79, 872 P.2d 736 (1994). But the *Vrabel* court found *Sodders*

distinguishable because *Sodders* involved a search. In contrast, no search or seizure occurred when the CI and Vrabel met in the parking lot. 301 Kan. at 809-10. Because of this factual distinction the *Vrabel* court determined *Sodders* was also legally distinct because K.S.A. 22-3216 provides for the suppression of evidence obtained through an unconstitutional or otherwise unlawful search or seizure. See *State v. Gray*, 306 Kan. 1287, 1297, 403 P.3d 1220 (2017) (recognizing K.S.A. 22-3216 provided for suppression remedy for violations of K.S.A. 2014 Supp. 22-4606[d] and 22-4609). But the statute did not apply in *Vrabel* because the PVPD did not conduct a search or seizure. *Vrabel*, 301 Kan. at 810-11.

The *Vrabel* decision then discussed whether there would be any other basis for suppressing evidence obtained in violation of K.S.A. 2014 Supp. 22-2401a. Amicus curiae had presented a "mildly seductive" rationale for doing so—the "rationale of maintaining the integrity of the judicial process by refusing to justify and condone tainted evidence." *Vrabel*, 301 Kan. at 812. Support for this rationale came from *State v. Pattioay,* 78 Hawaii 455, 896 P.2d 911 (1995), which had recognized courts' "'inherent supervisory power over criminal prosecutions to ensure that evidence illegally obtained by government officials or their agents is not utilized in the administration of criminal justice through the courts.' 78 Hawaii at 468." *Vrabel*, 301 Kan. at 812.

In considering that rationale, the *Vrabel* court looked to the purpose of K.S.A. 2014 Supp. 22-2401a. The court held:

> "[T]he statutory limitations on the jurisdiction of city officers was put in place to protect the local autonomy of neighboring cities and counties, rather than to create an individual right, assuring that a person could only be caught breaking the law by an officer of the jurisdiction within which the crime was being committed." 301 Kan. at 813.

9

The court also concluded the argument that the Legislature had intended to "create an individual right to be free from apprehension by an officer from outside the jurisdiction is belied by the exceptions incorporated into K.S.A. 2014 Supp. 22-2401a, which provide for ample lawful opportunities for such an apprehension to occur." 301 Kan. at 813.

Ultimately, the *Vrabel* court held that "the suppression of any evidence obtained during a city officer's unauthorized exercise of police power outside the officer's employing city—other than a search or seizure—will generally not be required." 301 Kan. at 813-14. The *Vrabel* court added that its conclusion found reinforcement in the fact the defendant had suffered no prejudice simply because the PVPD rather than the Leawood police department had arranged the buy. But the court issued a caution that serves as the basis for J.O.'s motion:  "Like our sister State to the West:  '"[T]his court cannot sanction willful and recurrent violations of the law" and . . . future violations "may trigger application of the [exclusionary] rule."' *People v. Martinez,* 898 P.2d 28, 33 (Colo. 1995) (quoting *People v. Wolf,* 635 P.2d 213, 217 [Colo. 1981])." 301 Kan. at 814.

In *Robinson*, 303 Kan. at 118-22, this court revisited the availability of a suppression remedy for a violation of 22-2401a. There, John E. Robinson challenged the Lenexa Police Department's warrantless searches of trash from his house in Olathe. We distinguished *Vrabel* because a search had occurred and thus suppression became an available remedy under Kansas' suppression statute, K.S.A. 22-3216(1). We noted, however, that the Kansas statute merely allows for suppression, it does not compel it. 303 Kan. at 121.

We then engaged in a two-part analysis:  (1) Did the Legislature intend to create individual rights or remedies under K.S.A. 22-2401a? and (2) Did the

10

defendant suffer an injury to substantial rights? As to the first question, we reviewed the statutory purpose of K.S.A. 2014 Supp. 22-2401a and reiterated our conclusion in *Vrabel*—the Legislature designed the statute "to protect local autonomy, not to create individual rights." 303 Kan. at 122. As to the second questions, we noted that Robinson could not "reasonably claim he suffered injury to any substantial right based on the fact that [Lenexa Police Department] officers, rather than Olathe police, conducted the otherwise lawful trash pulls." 303 Kan. at 122.

We left open the possibility of suppressing evidence as a remedy for violations of state law. But we stated: "[W]here a search is conducted in violation of state statute only and the statute violated does not vest defendant with an individual right, does not contemplate exclusion of evidence as a remedy, and the violation results in no cognizable injury to defendant's substantial rights, such a remedy is unavailable." 303 Kan. at 122. We did not in *Robinson* revisit our discussion of our inherent supervisory authority when faced with recurrent and willful violations of a statute.

While the Court of Appeals applied these cases, J.O. argues it erred by reweighing the evidence. We next turn to that argument.

2.    *Reweighed Evidence*

More specifically, J.O. argues the Court of Appeals reweighed evidence on its way to concluding the second buy substantially complied with K.S.A. 2016 Supp. 22-2401a. This argument depends, in part, on the standard of appellate review for considering a district court's ruling on a motion to suppress. In general, appellate courts review a district court's factual findings on a motion to suppress for substantial competent evidence and its legal conclusions de novo. *Robinson*, 303 Kan. at 110, 118. Substantial competent evidence is evidence that is relevant, substantive, and "furnishes a substantial

11

basis in fact from which the issues can reasonably be resolved." *State v. Sharp*, 289 Kan. 72, 88, 210 P.3d 590 (2009).

When assessing whether substantial competent evidence supports the district court's findings of fact, appellate courts do not "reweigh evidence, assess the credibility of witnesses, or resolve conflicts in evidence" and instead "give[] great deference to the factual findings of the district court." *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). District courts are "entitled to draw reasonable factual inferences from the evidence which [appellate courts] are not permitted to dispute by an inappropriate use of de novo review." *Sharp*, 289 Kan. at 91

Consistent with these principles, the Court of Appeals first noted it was bound by the district court's factual finding that the PVPD engaged in willful and recurrent violations because the State failed to cross-appeal. *J.O.*, 2017 WL 4848252, at *6. The district court had found that *Vrabel* was published on April 24, 2015, and involved the PVPD. In *J.O.*, the PVPD made the two controlled buys four and five months after *Vrabel*'s publication. The district court found the PVPD could and should have been aware of the decision, making the two controlled buys willful and recurrent violations.

Despite those findings, the panel mitigated the legal effect of the district court's conclusion by limiting its analysis to the September controlled buy because that was the only charge the State pursued. The panel then relied on the testimony of Mahoney (PVPD) and Hayselden (SPD), noting both had "testified that Hayselden had asked for Mahoney's assistance in completing the controlled buy." 2017 WL 4848252, at *6. This conclusion ignores an important requirement: A request for assistance must originate in the host jurisdiction, i.e., the jurisdiction in which the law enforcement powers are to be

12

exercised. Here, that means Shawnee must have initiated the request, not merely acquiesced in a proposal that originated outside the boundaries of Shawnee. See K.S.A. 2017 Supp. 22-2401a(2)(b) (permitting extraterritorial exercise outside an officer's jurisdiction "when a request for assistance has been made by law enforcement officers *from that place*"); see also *Robinson*, 303 Kan. at 123-24; *Vrabel*, 301 Kan. at 806.

Hayselden testified that Mahoney called him to inform him that a "drug investigation had led towards our city [of Shawnee], and he was wondering if we were able to handle it, and at that time, we are not due to other investigations we had going on. So I requested his assistance to complete *his investigation that started in his city*." (Emphasis added.) Another of Hayselden's responses on cross-examination emphasizes the point that the investigation did not originate in Shawnee:

> "Q:  And when you were contacted and notified of it, you went ahead and told Prairie Village to handle it since they had set it up?
>
> "A:  No, that is not correct. We were asked *if we were able to continue an investigation* involving a drug buy and we were not able to due to manpower and caseload." (Emphasis added.)

Hayselden's testimony establishes there was no request for assistance originated in Shawnee and thus no compliance with the statutory requirements. The panel erred in its analysis, and this error underlies its conclusions that the second buy "appears to have been in compliance with the statute" and that "application of the exclusionary rule here would likely not serve as a deterrent." *J.O.*, 2017 WL 4848252, at *6.

The district court, on the other hand, compared the phone exchange between the officers to the communication *Vrabel* had held to be an insufficient request for assistance under K.S.A. 2014 Supp. 22-2401a. The district court's factual findings are supported by

13

substantial competent evidence, and it reached its legal conclusion by properly applying established Kansas law. See *Vrabel*, 301 Kan. 797, Syl. ¶ 5.

### 3. *The District Court Did Not Err.*

We thus conclude that the PVPD violated K.S.A. 2017 Supp. 22-2401a when it conducted both buys. And, like the district court, we are troubled by the PVPD officers' continued extraterritorial exercise of their police powers. As we stated in *Vrabel*: "If the officers were acting as private citizens, i.e., were not exercising their police powers, then they were aiding and abetting the commission of a drug felony in Leawood." 301 Kan. at 803. Consistent with that conclusion, the district court implemented its own warning by advising it would remind testifying PVPD officers of their privilege against self-incrimination, as guaranteed by the Fifth Amendment to the United States Constitution.

As this court has observed, suppression of evidence "is a deterrent measure," not a personal right. *State v. Pettay*, 299 Kan. 763, 769, 326 P.3d 1039 (2014). "Therefore, its application is '"restricted to those situations in which its remedial purpose is effectively advanced."' [Citation omitted.]" 299 Kan. at 769.

Here, J.O. has not explained why suppression can be justified given the district court's remedial measure of warning the officers they should assert their Fifth Amendment rights. We suspect this warning serves as a greater deterrent than an order of suppression would. Moreover, as we noted in *Vrabel* and *Robinson*, K.S.A. 2014 Supp. 22-2401a protects local autonomy; it does not create an individual right. *Vrabel*, 301 Kan. at 813; *Robinson*, 303 Kan. at 122. And, like the defendants in those cases, J.O. cannot reasonably claim she suffered injury to any substantial right based on the fact a PVPD officer, rather than a Shawnee officer, set up the controlled buys.

14

Under these circumstance, and in light of the district court's strong warning, we hold the district court did not err when it decided not to suppress the evidence.

Affirmed.